# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO: 3:06-CV-395-DCK

| TONYA J. SHAVER, | ) |
| --- | --- |
| Plaintiff, | ) |
| | ) **ORDER** |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** upon the "Plaintiff's Motion for Summary Judgment" (Document No. 9) and the Defendant Commissioner's "Motion for Summary Judgment" (Doc. No. 10).[1] Plaintiff Tonya J. Shaver, through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits ("DIB"). The parties have consented to Magistrate Judge jurisdiction. (See Doc. Nos. 3, 5). This matter has been fully briefed and is ripe for review. After careful consideration of the written arguments, the administrative record, and the applicable authority, the undersigned will **affirm** the Commissioner's administrative decision for the following reasons:

## I. BACKGROUND AND PROCEDURAL HISTORY

The Plaintiff was born on April 15, 1970, completed school through the eighth grade, is married with several children, and has past full-time work experience in customer service and as a

---

[1] Although Joanne Barnhart was originally listed in the caption as the Commissioner of Social Security, Michael J. Astrue subsequently became Commissioner. Rule 25 of the Federal Rules of Civil Procedure provides that a public officer's "successor is automatically substituted as a party" and that "the court may order substitution at any time."

sales clerk in a retail store from 1986 until August 2001. ((Tr. 33, 52, 143, 151-152, 156). She indicated that she stopped working to raise her children. ((Tr. 52). She had back surgery at age twelve in 1982 for scoliosis of the back. ((Tr. 136).

Although Plaintiff indicates that she filed an application for supplemental security income with the Social Security Administration (Doc. No. 1), the Commissioner clarifies that the application was a "Social Security Disability Insurance Benefit claim." (Doc. No. 6 at 1).[2] Plaintiff filed this claim on December 2, 2003 ((Tr. 33-37) alleging that she became unable to work on August 1, 2001, due to thoracic scoliosis, asthma, and severe arthritis and back pain from her back surgery in 1982. ((Tr. 33, 49, 51, 60, 155).

The application was denied initially and on reconsideration. (Tr. 21, 22, 23-26, 29). After a hearing, Administrative Law Judge Robert Egan ("ALJ") found that the Plaintiff was not disabled and denied the application. On July 21, 2006, the Appeals Council denied the Plaintiff's request for review ((Tr. 3-5), and thus, the hearing decision is the final decision of the Commissioner, subject to judicial review. 20 C.F.R. §§ 404.955 and 404.98. The Commissioner acknowledges that the Plaintiff has exhausted the requisite administrative remedies. (Doc. No. 11, p. 2).

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), limits judicial review of the Commissioner's final decision to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also*

---

[2]The Commissioner points out that the ALJ's decision erroneously indicates that Plaintiff filed an application for Supplemental Security Income in August 2001.

*Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*).

"Substantial evidence" is defined as "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established." *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401. The reviewing court must not re-weigh the evidence or substitute its judgment for that of the Commissioner. *Hays*, 907 F.2d at 1456; *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986).

The Commissioner, not the court, has the responsibility to make findings of fact and to resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Provided the Commissioner's decision was supported by substantial evidence, the Court must affirm, even if the Court would have decided the case differently. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . ." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). To establish entitlement to benefits, Plaintiff had the burden of proving that she was disabled within the meaning of the Social Security Act. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## III. THE ALJ'S DECISION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. See 20 C.F.R. § 416.920. At the first two steps of the process, the ALJ found that Plaintiff had not worked after her alleged onset of disability (August 1, 2001) and that her thoracic scoliosis, lumbar degenerative disease and reversible airway disease were severe impairments within the meaning of the Social Security regulations. (Tr. 11-12, 13 at Findings 1-3). The ALJ found that these impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P of Regulation No. 4 (Tr. 12, 13 at Finding 3). At the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work that did not require concentrated exposure to fumes, dust, and gases and that this RFC permitted her to perform her past relevant work as a retail store clerk. (Tr. 7-12, Finding 6). The ALJ concluded that the Plaintiff was not disabled and denied the claim for benefits.

## IV. ANALYSIS

### A. Allegations

Tonya Shaver ("Plaintiff") disputes the ALJ's finding that she retains the residual functional capacity ("RFC") for light work with certain restrictions. Specifically, Plaintiff alleges that the ALJ's decision was not supported by substantial evidence because it: (1) ignored Dr. Freeman's prognosis for Plaintiff; (2) ignored the diagnosis made by the orthopedic consultant, Dr. Pyle; and (3) was not supported by any other medical evidence. (Doc. No. 9, p. 8). The Commissioner points out that the Plaintiff is merely drawing "isolated statements out of the record rather than considering the record as a whole." (Document No. 11, p. 7). The Commissioner asserts that the ALJ's decision is supported by substantial evidence of record.

### B. The ALJ properly considered Dr. Freeman's evaluation.

The record reflects that Plaintiff saw Dr. Tyler I. Freeman on March 11, 2004 in connection with Plaintiff's disability application. Contrary to Plaintiff's assertion, the ALJ did not "ignore" this physician's opinion, including his prognosis for Plaintiff. The ALJ specifically stated that he considered the findings "of the state agency consultative examiner, Dr. Tyler Freeman," and that this opinion would be "given weight only insofar as [it was] supported by the whole record." ((Tr. 13).

In his evaluation, Dr. Freeman observed that Plaintiff was able to walk normally and get on and off the examining table without assistance. ((Tr. 131-132). He found that all of Plaintiff's joints "clinically appear[ed] normal without any enlargement, thickening, effusion, swelling, tenderness, heat, redness, muscle wasting, deformity, instability, or ankylosis." (Tr. 133). Dr. Freeman found "[n]o motor or sensory deficits," that Plaintiff was "able to perform the heels-toe maneuvers and to squat and rise," and that she was "able to grasp, raise her arms overhead and perform dexterous movements with her hands." ((Tr. 133).[3] He also noted that although Plaintiff reported asthma, she smoked a pack of cigarettes each day. ((Tr. 133).

The only limitations Dr. Freeman noted were that Plaintiff had decreased flexion and extension of Plaintiff's lumbosacral spine to 50 degrees/ 10 degrees and that Plaintiff's "right shoulder is held lower than the left as is the left hip." ((Tr. 133). Dr. Freeman's prognosis for Plaintiff was: "Guarded. The patient's current impairments may affect her ability to sit and stand for prolonged lengths of time, move up, bend, and carry moderately heavy objects." ((Tr. 133).

---

[3]This is consistent with other medical evidence in the record, including Dr. Dascal's notes that the Plaintiff "ambulates normally," is on no medications, had no motor or sensory deficits, and that Plaintiff was able to do light work within her restrictions. (Tr. 91).

The ALJ's finding is consistent with Dr. Freeman's evaluation of the Plaintiff. The ALJ found that Plaintiff was capable of performing "light work" involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds . . . [and] a good deal of walking or standing." (Tr. 12). The limitations noted by Dr. Freeman would not prevent Plaintiff from performing this type of work, as sitting and standing do not require significant flexion or extension of the back. The prognosis only referred to prolonged sitting and standing and carrying moderately heavy objects. (Tr. 133). Therefore, Plaintiff's assertion that the ALJ ignored Dr. Freeman's prognosis is without merit.

### C. The ALJ properly considered the orthopedic specialist's evaluation.

Plaintiff argues that the ALJ ignored the diagnosis of Dr. Robert Pyle, the consulting orthopedic specialist who conducted the Plaintiff's "Physical RFC Assessment." (Tr. 83-90). However, this assertion is unfounded, as the ALJ considered the state agency's findings (as determined by Dr. Pyle) that the Plaintiff had the RFC to perform "light" work with no concentrated exposure to fumes, dust, and gases. The ALJ found the state agency's assessment to be consistent with the record as a whole. (Tr. 13).

Further, Plaintiff mistakenly contends that Dr. Pyle "diagnosed" her as experiencing constant back pain, being able to walk only twenty steps, being able to stand five minutes, sit five minutes, lift five pounds, and having to rest every five minutes when in the store. This commentary was not a "diagnosis," but rather a recitation of the self-reported allegations Plaintiff made to Dr. Pyle during their meeting. (Tr. 90).[4] Dr. Pyle's actual conclusions about Plaintiff's abilities were: that Plaintiff

---

[4] Moreover, the ALJ found the Plaintiff had "overstated" her functional limitations. (Tr. 12). In finding Plaintiff's complaints less than fully credible, the ALJ noted that no treating physician had limited her activities, that her X-rays did not indicate severe arthritis, that she was not taking

could occasionally lift twenty pounds, frequently lift ten pounds, and stand, walk, and sit for about six hours in an eight-hour workday; that Plaintiff had an unlimited ability to push or pull, including operation of hand or foot controls; that Plaintiff occasionally experienced postural limitations (climbing, balancing, stopping, kneeling, crouching, or crawling); that Plaintiff had no manipulative, visual, or communicative limitations; and that Plaintiff's environmental limitations were only that she should avoid concentrated exposure to fumes, odors, dusts, gases, or poor ventilation. ((Tr. 84-87). This supports the ALJ's RFC finding because light jobs involve:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of the arm or leg controls.

20 C.F.R. § 404.1567(b). Because the ALJ's RFC finding is consistent with Dr. Pyle's conclusions, Plaintiff's argument as to Dr. Pyle is unavailing.

### D. **The ALJ's decision was supported by objective medical evidence**.

Finally, Plaintiff argues in conclusory fashion that the ALJ's decision was not supported by any other medical evidence. However, the ALJ's decision specifically discussed the Plaintiff's medical records and evaluations. (Tr. 11-13). As long as the ALJ properly considered all relevant facts and his decision is supported by substantial evidence, the Court will affirm the Commissioner's decision. *See Perales*, 402 U.S. at 390, 401; *see also Hays*, 907 F.2d at 1456. In determining a claimant's RFC, the ALJ must consider primarily medical findings (i.e., the symptoms, signs, and laboratory results), but also any descriptions and observations of the claimant's restrictions by medical

---

any prescription medication for pain, and that her daily activities were consistent with the ability to do light work. (*Id*.).

and nonmedical sources. Social Security Ruling 86-8 at "Interrelationship of Medical and Vocational Factors" ¶ 8.

In the present case, the ALJ considered the evidence of record, including both Dr. Freeman and Dr. Pyle's evaluations of the Plaintiff. (Tr. 12-13). The ALJ also considered the treatment notes of Dr. Nagel, Plaintiff's treating physician, who could not initially determine the cause of Plaintiff's reported problems, but eventually advised her to follow an exercise and weight loss regimen to combat her obesity. (Tr. 12).[5] The record refutes Plaintiff's generalized claim that the ALJ's decision was not supported by the medical evidence of record. The ALJ also reviewed other relevant evidence, including the claimant's reported level of daily activities, lack of consistent medical treatment, and lack of the need for narcotic pain medication on a consistent basis. (Tr. 12). The undersigned finds that the ALJ properly considered all of this evidence and that the ALJ's RFC determination was supported by substantial evidence.

### E. The ALJ's finding at step four was supported by substantial evidence.

Finally, the ALJ determined at step four that the Plaintiff is not disabled. In his decision, the ALJ found that Plaintiff "retain[ed] the residual functional capacity to perform her past relevant work as a retail customer service clerk." (Tr. 12). According to Plaintiff's own testimony, in her previous job she was required to stand and walk most of the day, lifting no more than 10 pounds on a consistent basis.[6] ((Tr. 12). In his RFC Assessment, Dr. Pyle found that Plaintiff was capable of

---

[5] Plaintiff stands 5'2" and weighed 180 lbs (Tr. 11).

[6] The ALJ mistakenly noted that Plaintiff had to sometimes lift up to fifty pounds. ((Tr. 12). This is inconsistent with the record, as the Plaintiff stated that she occasionally accept returns of TVs at the customer service desk, but that she would leave it to someone else to lift or move the TV. (Tr. 146). The Plaintiff also testified that during her fourteen years at K-Mart, the company assigned her to duties in the store that required minimal or no lifting because they knew about

frequently lifting items weighing ten pounds and occasionally lifting or carrying items weighing no more than twenty pounds. ((Tr. 84). This is consistent with the requirements of "light work," which involve "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Therefore, the Court finds that ALJ's decision at step four was supported by substantial evidence. Any additional commentary as to Plaintiff's ability to perform her past relevant work as performed in the national economy simply strengthens the finding that Plaintiff is not disabled.[7]

## V. CONCLUSION

In conclusion, the Commissioner's decision was based on substantial evidence in the record as a whole. In addition, the Plaintiff has not shown "good cause" pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g), to warrant reversal or remand.

**IT IS, THEREFORE, ORDERED** that:

1. The Commissioner's administrative decision is **AFFIRMED**;

2. Defendant's Motion for Summary Judgment (Document No. 10) is **GRANTED**; and

3. Plaintiff's Motion for Summary Judgment (Document No. 9) is **DENIED.**

Signed: July 9, 2009

David C. Keesler
United States Magistrate Judge

---

her impairments. (Tr. 164).

[7] The ALJ further noted that the Plaintiff's previous job involving "light work" fit the description of a retail sales clerk as performed in the general economy. (Tr. 12, 13).